UNITED STATE BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: <br><br> NNN 123 North Wacker, LLC <br> (herein a/k/a TIC 0), <br>                       Debtor <br><br> and | Bankruptcy No. 13-bk-39210 <br><br> Chapter 11 |
| NNN 123 North Wacker Member, LLC <br> (herein a/k/a TIC Member), <br>                       Debtor <br><br> (Administratively consolidated) | Bankruptcy No. 13-bk-39240 <br><br> Chapter 11 |

## MEMORANDUM OPINION ON MOTION OF TROY THOMAS TO DISMSS BANKRUPTCY CASES

Debtors filed voluntary petitions in the two above-captioned bankruptcy cases, seeking relief under Chapter 11. The cases were consolidated for administrative purposes.[1]

123 North Wacker is a 30-story class A office building located in downtown Chicago. It is owned by thirty-three single-purpose LLCs as tenants in common. Among these is NNN 123 North Wacker, LLC ("TIC 0"). The question as to who is a member of TIC 0 is the substance of the dispute underlying this pending Motion of Troy Thomas to Dismiss. (Dkt. 155.) Debtors argue that NNN 123 North Wacker Member, LLC ("TIC Member") is the sole member of TIC 0, which in turn is owned by about 159 individual members including Troy Thomas ("Thomas"). Thomas maintains that he and the other investors are directly members of TIC 0.

Thomas moved to dismiss as to both cases under 11 U.S.C. § 1112(b), arguing that TIC 0's bankruptcy petition was filed without proper authority because TIC 0's LLC operating agreement required unanimous consent of the members – consent which was never sought, and consent which he never gave. Debtors argue that the filing was proper because TIC 0 had only one member, TIC Member, which had consented to the bankruptcy filing, and also that Thomas should be barred from filing his motion under the equitable doctrine of laches. For the following reasons, the bankruptcy case of TIC 0, 13-bk-39210, will be dismissed, but the motion to dismiss bankruptcy case of TIC Member, 13-bk-39240, will be denied.

---

[1] The lead case is for NNN 123 North Wacker, LLC, 13-bk-39210. All Docket entries refer to that case unless otherwise indicated.

## UNDISPUTED FACTS AS ALLEGED

Since no evidentiary hearing has been held, or for that matter requested, the following uncontested facts are drawn from exhibits and affidavits attached to the pleadings and other documents in the case docket. With one limited exception discussed below, the authenticity of the documents discussed below is not in dispute, merely their legal effect.

1. August 5, 2005: TIC 0 issued a Confidential Private Placement Memorandum soliciting investors, which included a fillable subscription agreement and a copy of the LLC operating agreement of TIC 0, which stated that it was subject to revision. (Dkt. 155 Exh. A1, A1A, A1B.) It offered membership and ownership interests in TIC 0 in return for investments of $25,000 and above.

2. September 13, 2005: TIC Member was formed (Dkt. 181 Exh. 2)

3. September 26, 2005: TIC 0 issued a certificate showing that TIC Member held 100% of the membership interest in TIC 0. (Dkt. 202 Exh. A1.)

4. September 26, 2005: TIC Member and MMA/Transwestern Mezzanine Realty Partners II, LLC entered into a mezzanine loan. (Dkt 202 Exh. 4 at 61.) TIC Member then pledged its ownership interest in TIC 0 as collateral (Exh. 5.), and signed an undated irrevocable transfer power assigning its interest in TIC 0 in favor of the lender. (Exh. 4.)

5. October 27, 2005: Thomas and his wife (collectively, the "Thomases") signed the subscription agreement and sent a check for payment of their subscription to the escrow agent. (Dkt. 181 Exh. 1B.) Debtors raise issues about the authenticity of this document, including some handwritten changes, and the authenticity of Melanie Thomas's signature.

6. November 17, 2005: Both Thomases were issued a certificate showing their membership in the TIC 0 LLC. The certificate issued was signed on behalf of Triple Net Properties, LLC, ("Triple Net") by Anthony W. Thompson, President.

7. March 3, 2006: The Mezzanine Loan balance of $2,790,755.95 owed by TIC Member was paid by a wire transfer from a TIC 0 bank account. (Dkt. 202 Exh. 3.)

8. These bankruptcy cases were filed on October 10, 2013.

9. The Proofs of Claim filed against TIC 0, and objected to by it, include twelve certificates by different holders identical to the one issued to the Thomases except for the name of the issuee and the date, issued from as early as September 28, 2005 (Claim 29-1) and as late as July 31, 2006 (Claim 27-1). Even though those certificates (as well as the Thomas certificate) say on their face that they were issued by TIC 0, and many of the claims of the certificate holders were filed against TIC 0, Debtors say in their objection to those Proofs of Claim that "it appears that the bulk of

2

Equity Claims are asserted against TIC 0 as opposed to TIC Member. The Debtors are investigating further, and reserve the right to object to such claims on any other grounds, including that they may have been filed against the wrong Debtor." (13-bk-39240 Dkt. 39 at 7 n.4.)

10. There was no attempt by Debtors to show that any revised version of the private placement memorandum or subscription agreement was ever used or submitted to persons being solicited to invest.

Other undisputed facts are found in the discussion below.

## DISCUSSION

### JURISDICTION

Jurisdiction lies over this motion to dismiss under 28 U.S.C. § 1334. It is referred here by Internal Procedure 15(a) of the District Court for the Northern District of Illinois. This matter concerns the dismissal of a bankruptcy case, and is therefore a core proceeding under 28 U.S.C. § 157(b)(2)(A). A motion to dismiss under § 1112(b) "stems from the bankruptcy itself," and may constitutionally be decided by a bankruptcy judge. *Stern v. Marshall*, 131 S.Ct. 2594, 2618 (2011).

### AUTHORITY TO FILE A BANKRUPTCY PETITION

Section 1112(b) of the Bankruptcy Code provides that a bankruptcy may be dismissed for "cause," enumerating a list of non-exclusive grounds. "The authority to file a bankruptcy petition on behalf of a corporation must derive from state corporate governance law." *In re Gen-Air Plumbing & Remodeling, Inc.*, 208 B.R. 426, 430 (Bankr. N.D. Ill. 1997); *Price v. Gurney*, 324 U.S. 100, 106 (1945). In addition to "cause" under § 1112(b), lack of corporate authority to file is an independent ground for dismissal of a bankruptcy case filed by a corporation. *Price v. Gurney*, 324 U.S. 100, 106 (1945). The same is true for an LLC. *In re Avalon Hotel Partners, LLC*, 302 B.R. 377 (Bankr. D. Oregon 2003). An agreement between LLC members limiting the power of an LLC to file bankruptcy has been held to be valid. *In re DB Capital Holdings, LLC*, 463 B.R. 142, 2010 WL 4925811 at *3 (10th Cir. BAP, Dec. 6, 2010) ("Debtor has not cited any cases standing for the proposition that members of an LLC cannot agree among themselves not to file bankruptcy, and that if they do, such agreement is void as against public policy, nor has the court located any.")

Delaware state law (which is cited by both parties) provides that an LLC will be managed according to the LLC agreement enacted by its members. Del. Code tit. 6, § 18-402. The parties here agree that the TIC 0 operating agreement requires the unanimous consent of its members in order to file for bankruptcy. Section 2.01(b) of the TIC 0 operating agreement states that "so long

3

as any obligation secured by the Loan remains outstanding and not discharged in full, the Member and the Company and any other Person on behalf of the Company shall have no authority, unless such action has been approved by the Independent Manager *and the unanimous vote of the Members*, to file a voluntary petition or otherwise initiate proceedings to have the Company adjudicated bankrupt or insolvent." (Dkt. 175 Exh. 2, emphasis supplied.) It is undisputed that the "Loan" referred to still remains outstanding, and that the only member of TIC 0 who has approved the bankruptcy filing was TIC Member. Thus, the issue is whether the movant Thomas and other holders of similar certificates are members of TIC 0, as Thomas contends and as their certificates declare. Thomas argues that he is a member of TIC 0 because he was offered a membership interest in TIC 0 through a private placement memorandum (Dkt 155 Exh. 1.), signed a subscription agreement, (Dkt 181 Exh. 1B.) paid money to invest in TIC 0 (Id.), and was issued a certificate showing his membership and ownership interest in TIC 0. (Dkt. 181 Exh. 1A.) Debtors argue that specific provisions in the documents offering the membership interest were subject to amendment, and that the final, executed LLC operating agreements (Dkt. 174 Exhs. B1 & B2) created a two-LLC structure in order to accommodate a mezzanine loan, and as a result, the Thomases was instead given an interest in TIC Member in exchange for their investment.

The movant Thomas bears the burden to demonstrate by a preponderance of evidence that the bankruptcy filing was unauthorized. *In re ComScape Telecommunications, Inc.*, 423 B.R. 816 (S.D. Ohio 2010). Imposing the initial burden of proof on a Chapter 11 debtor would allow any aggrieved party to "force a debtor to 'expend its diminished resources litigating over the issue whether it could seek to rehabilitate or liquidate itself in an orderly fashion under the auspices of the Bankruptcy Code.'" *In re Quad-C Funding LLC*, 496 B.R. 135, 142 (Bankr. S.D.N.Y. 2013). Such threshold litigation would circumvent the purpose of the Bankruptcy Code, which "is designed to be a short and simple process that allows debtors to protect creditors and/or start rehabilitation immediately." *Id.*

### NO AUTHORITY OF TIC 0 TO FILE FOR BANKRUPTCY

The undisputed facts and claims referred to show certificates of interest in TIC 0 being issued to investors beginning on September 28, two days after the conveyance of the 100% interest to TIC Member. The Thomases paid for their investment in TIC 0 on October 27, a month after TIC 0 had conveyed 100% of its membership interests to TIC Member. The Thomases' certificate was then issued on November 17. These membership interests were authorized, because as Thomas argues, TIC Member had power under the LLC operating agreement to assign all or part of its membership interest in TIC 0 to new members. Indeed, the TIC 0 operating agreement

4

provides at ¶ 8.01(c): "One or more additional members of the Company may be admitted to the Company with the written consent of the Member." (Dkt. 202 Exh. B1 at 7.) According to the language of the certificate that the Thomases received, they became "a member" and were given ownership of "5.3476 units of membership interests" in TIC 0, not TIC Member. Further, the certificate was signed by an officer of Triple Net. Triple Net was, according to the private placement memorandum, the manager of TIC 0. Further, under the LLC operating agreements tendered by Debtors, Triple Net was the manager of TIC Member. (Dkt. 202 Exh B2 at 35.) The other certificates filed together with claims by others also certified that the holders were members of TIC 0.

Debtors argue that the certificates were issued to the Thomases and the others without authority because the individual who signed the certificates did so on behalf of Triple Net, but Triple Net had no authority to act on behalf of TIC 0 because only TIC Member had authority to act on behalf of TIC 0. Thomas maintains that the signature was proper because Triple Net had authority to act on behalf of TIC Member. Under Delaware state law, a member's signature does not bind the LLC unless the member signs in his capacity as member, or if there is "evidence of an intent to act in that capacity." *Credit Suisse Sec. (USA) LLC v. W. Coast Opportunity Fund, LLC*, C.A. 4380-VCN, 2009 WL 2356881 (Del. Ch. July 30, 2009). Thus it is argued by Debtors that, Triple Net's signature did not bind TIC Member (and by turn, TIC Member would not have bound TIC 0) unless Triple Net was shown to sign in its capacity as manager of TIC Member (which the certificate did not say it did) or there was evidence of an intent to act in that capacity. However, a notation on the signature line is not required to establish a corporate capacity. *Ray v. Harris*, CIV.A. 06 C-07-005 2008 WL 2410208 (Del. Super. Feb. 26, 2008). Further, there is a well-settled rule of agency law that an undisclosed principal may be held liable for the acts of an agent "on proof of his existence and identity." *Nalbandian v. Hanson Restaurant & Lounge Inc.*, 369 Mass. 150, 153 (1975) (citing the Restatement (Second) of Agency § 190). Here, the certificate shows that Triple Net was acting on behalf of TIC 0 in its capacity as manager of TIC Member. The certificate was signed by a responsible officer, and purported to be issued by TIC 0, Triple Net purported to have authority to issue the certificate, and – through TIC Member – it did have authority to issue the certificate. As a result, the signature of Thompson on behalf of Triple Net, seen in the context of the certificate and documentation referred to here, indicates an intent to act as the manager of TIC Member, and therefore was sufficient to bind TIC 0.

Even if the exclusion of the name of TIC Member from the signature block on the certificates somehow deprived Triple Net of authority to issue them, Triple Net had apparent

authority to issue the certificate. The Thomases and others paid their investments on a subscription that offered them the very interests that were certified to them after they had paid the money solicited. "Manifestations by the alleged principal which create a reasonable belief in a third party that the alleged agent is authorized to bind the principal create an apparent agency from which spring the same legal consequences as those which result from an actual agency." *Billops v. Magness Const. Co.*, 391 A.2d 196, 198 (Del. 1978). Delaware law requires actual reliance, and that the reliance be reasonable. *Id.* Here, the private placement memorandum named Triple Net as the manager of TIC 0. The Thomases and other investors sent money to invest in TIC 0, and were issued certificates showing they had memberships in TIC 0 signed by the manager that was named in the Private Placement Memorandum. Further, when the investors holding similar certificates filed their proofs of interest (mislabeled as proofs of claim), they claimed memberships and interests in TIC 0. Debtors, now under new management, claim that no such interests had been issued in TIC 0, the certificates notwithstanding, although (as noted in oral argument) they do not know all circumstances as to the issuance of the certificates. (Dkt. 237 at 33.) Indeed large investments were accepted and Debtors argue that the interests offered in return for those investments were later changed – without any apparent notice to investors and without offering to return the investments if the investors didn't like the changed offer. However, the certificates were issued in the form just as the investors were promised, but without any claim at the time that the certificates were meaningless.

In effect, Debtors' argument is that they marketed investments in TIC 0 through a private placement memorandum, investors in turn returned a subscription agreement purporting to purchase a membership interest TIC 0, Debtors issued certificates purporting to grant memberships in TIC 0, but that *somehow*, in actuality, the investors received memberships in a different entity altogether, TIC Member.[2]

It must be concluded that the uncontested documents submitted are enough to show more probably than not that TIC 0 was not authorized by its many members to file for bankruptcy. The burden to rebut the showing of a lack of authority to file then shifted to the putative debtors, a burden which it has not carried because they have not offered to introduce any evidence supporting their position.

---

[2] Debtors raise a factual issue regarding the Thomases' copy of the subscription agreement, questioning the authenticity of Melanie Thomas's signature and handwritten correction of the name of the LLC from NNN One Nashville Place, LLC to NNN 123 N Wacker, LLC. Those purported deficiencies in the subscription agreement returned to Debtors are irrelevant because in any case, the Thomases were issued a certificate showing membership in TIC 0.

6

### LACHES

Debtors argue that the motion is barred by laches because although § 1112(b) contains no express limitations period, "courts exercise their equitable discretion to deny a § 1112(b) motion as untimely." In re Shea & Gould, 214 B.R. 739, 749 (Bankr. S.D.N.Y. 1997). Laches is appropriate when there is (1) delay in the assertion of a claim; (2) the delay is inexcusable; and (3) undue prejudice results from the delay. Geyen v. Marsh, 775 F.2d 1303, 1310 (5th Cir. 1985).

The delay in filing the Thomas dismissal motion was not inexcusable and did not cause prejudice under the circumstances. Debtors' cases applying laches involved a 15-month delay, (In re Mirant Corp., 03-46590, 2005 WL 2148362 (Bankr. N.D. Tex. Jan. 26, 2005)), a 19-month delay, (In re Shea & Gould, 214 B.R. at 749), and a twelve-month delay (In re I.D. Craig Serv. Corp., 118 B.R. 335, 337 (Bankr. W.D. Pa. 1990)). All of those cases also involved a showing of harm resulting from the delay. In comparison, the six-month delay here was quite short. Thomas filed his motion to dismiss within a month of retaining counsel, and Debtors were not shown to have been prejudiced. Debtors argued that they were subject to undue prejudice from the delay because the motion for approval of the Restructuring Support Agreement ("RSA") was subject to a hard deadline imposed by the secured lender. However, any such possible prejudice was obviated when the motion to approve the RSA was allowed to proceed on a separate schedule from the motion to dismiss, and eventually approved before the deadline. (Dkt. 194). Moreover, Debtors were aware that the motion to dismiss and the motion for approval of the RSA were proceeding on separate tracks, and took the risk that even with the RSA approved, the bankruptcy case could subsequently be dismissed. (Dkt. 221 at 34.)

### AUTHORITY OF TIC MEMBER TO FILE FOR BANKRUPTCY

Thomas's motion also requests dismissal of the bankruptcy case of TIC Member. The pleadings only addressed what rights the investors had in TIC Member in the alternative scenario wherein they would have been found to have membership interests in TIC Member instead of TIC 0. Here, Thomas has made a case that he and the other investors are members of TIC 0, not TIC Member. Regardless of whether TIC Member's LLC operating agreement requires the consent of its members for authority to file a bankruptcy petition, TIC Member does not need the consent of Thomas and the other investors who, according to the facts established here, were issued membership interests in TIC 0, not TIC Member.

## CONCLUSION

For the foregoing reasons, Troy Thomas has shown on the undisputed facts that the bankruptcy cases were filed without requisite authority. Although the Court mentioned at status hearings and during oral argument the possibility of holding an evidentiary hearing to allow putative Debtors to rebut the preliminary showing, Debtors never requested an opportunity to present evidence. (Dkt. 221 at 25-26; Dkt. 237 at 57.) When asked specifically if an evidentiary hearing would be requested, Debtors' counsel did not do so. (Dkt. 190 at 9.)

If Debtors seek to recharacterize memberships in TIC 0 that were certified as belonging to a number of investors into memberships in TIC Member, it must do so through some form of litigation which is not presently before the court. Any such litigation must join holders of certificates of TIC 0 membership that were issued in accordance with the only subscription agreement which is of record. Debtors cannot simply give their argument why those certificates are not valid and binding without some form of evidentiary showing to rebut the rights of investors who hold certificates of membership but were denied a say in the bankruptcy filing.

Therefore, the bankruptcy case of TIC 0, 13-bk-39210 will be dismissed under § 1112(b) by separate order to be entered May 29th, 2014 because it was filed without authority.

However, the motion to dismiss the bankruptcy case of TIC Member, 13-bk-39240, will be denied.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated May 27th, 2014